## BOARD OF COMMISSIONERS OF CREEK COUNTY et al. v. ST. LOUIS-S. F. R. CO. et al.

### No. 25530. Feb. 5, 1935.

Sebe Christian and J. E. Thrift, for plaintiffs in error.

J. W. Jamison and Cruce, Franklin & Satterfield, for defendants in error.

BAYLESS, J. R. L. Jones, who is referred to hereinafter as protestee, and the board of county commissioners of Creek county, Okla., appeal from a judgment of the Court of Tax Review sustaining the protest of the St. Louis-San Francisco Railway Company, a corporation, hereinafter called protestant.

The facts are these: Protestee became the owner, by assignment, of certain tax sale certificates issued by the county treasurer of Creek county, .Okla., which certificates were illegal, and as a result the said county became bound to refund the face thereof as provided by section 9739, C. O. S. 1921, as amended by chapter 30, S. L. 1925, now section 12749. O. S. 1931. Protestee filed an action against the board of county commissioners of Creek county, Okla., to recover the money represented by these illegal tax sale certificates and in his petition alleged, in substance: (1) The sale of the taxes

and the issuance of said certificates, and the indorsement thereon of later taxes upon the same property; (2) the illegality of the sale because no taxes were due; and (3) as a result thereof the liability of said county to refund to protestee the taxes so paid with interest. The county defended said action by filing an answer which was a general denial. Upon trial, judgment was rendered for protestee for the amount of money found to be due, and the journal entry of judgment recites that evidence was offered and received. Thereafter the proper county officials were taking the statutory steps to make a levy for sinking fund purposes to retire the judgment rendered in behalf of protestee. The protest out of which this appeal arises was then filed and prosecuted successfully.

A number of matters are presented and argued, but in our opinion they all relate to one question, to wit: By what method is a person who owns illegal tax sale certificates to get a refund from the county as provided by the statute, supra? The question may be stated this way: May he sue the county in an ordinary civil action for the recovery of money upon the statutory obligation, or is it necessary that the county appropriate the necessary funds to pay any refunds and require the holder of illegal tax sale certificates to file a claim therefor and follow the usual statutory procedure for the payment of claims against a municipal subdivision, such as a county, even to the extent of seeking a mandamus to force the proper officials to perform their statutory duties?

Protestant takes this last alternative and says that it is the exclusive remedy, and because protestee did not in his petition allege anything regarding such an appropriation or the failure to make such an appropriation, he did not state a cause of action; and the court lacked one of the three essential elements of jurisdiction: the power to render the particular judgment sought. Protestant asserts that said judgment is void upon its face and that such invalidity is apparent upon the face of the judgment roll by reason of these deficiencies in the pleading and power of the court. The section of the statute upon which protestee relies for his refund is 9739, C. O. S. 1921 (sec. 12749, O. S. 1931), reading:

"When land has heretofore been or shall hereafter be sold, on which no tax was due, and a tax sale certificate issued by the

treasurer thereon, the county shall save the purchaser or his assigns harmless by refunding and paying to him or them the original purchase money paid thereon, together with the subsequent indorsements, with interest from date of payment at six per cent. per annum."

No method is specified by this statute by which the refund is to be made. We find numerous cases in which actions have been brought for the recovery of this money and no question has been raised concerning the right of the holder to bring an action rather than by seeking to have an appropriation made. In fact, the contrary appears in at least one of these cases, Meriwether v. Board of Com'rs of Comanche County, 150 Okla. 223, 1 P. (2d) 390, in which we held that the right of refund provided in this section was not a claim against the county in the sense of a contract, and that such rights to refunds were not governed by the statutes relating to claims or the statutes of limitations applicable thereto.

There is certain language in our opinion in Re Protest of St. Louis-San Francisco Ry. Co., 166 Okla. 50, 26 P. (2d) 212, upon which protestant relies, seemingly indicating that no cause of action existed in favor of the holder of such certificates, but that such holder must rely upon the county making appropriation and the filing of a claim and the consequent course of procedure relating thereto. In view of this language and the apparent confusion which it leads to, it is necessary for us to determine the question in this opinion for the guidance of the Court of Tax Review and the lower courts.

There is no question but that an obligation exists to refund taxes sold where no taxes were due as in this case, and that this duty rests upon the county selling the tax and issuing the certificate. In our opinion, in view of the fact that the statute of 1921, supra, does not attempt to specify the method in which this refund may be applied for and secured, it is immaterial which method is followed. A county may anticipate that certain tax sale certificates issued by it may be held to be illegal and that claims for refund of the money paid therefor will be filed and in anticipation of this may appropriate, within constitutional limits, to take over any such claims filed. However, if the proper officials of the county did not so choose to handle the matter of refund, the holder of these certificates would be remediless unless he could by an action, or a series of actions, in mandamus force

the proper county officials to appropriate therefor. We said in Feuquay v. McAlister, 102 Okla. 164, 228 P. 487:

"Under our Code of Civil Procedure 'mandamus' is a special proceeding, addressing itself to the equity powers and conscience of a court or judge, for the enforcement of a clear legal right, for which the law provides no adequate proceeding."

We are of the opinion that it is more in keeping with the orderly course of government and judicial proceedings to construe the section, supra, to give the holder of an illegal tax sale certificate the remedy of civil action to recover money when the county does not choose to appropriate to provide for the refund of illegal tax sale certificates, instead of relegating the holder of such certificate to a special proceeding or a series of special proceedings to enforce the exercise of the duties of county officials.

By this we mean to say that the county may appropriate to care for these refunds, or it may elect not to do so and to permit the holders thereof to bring their actions to establish their right to the refund, whereupon the county may pay said judgments as provided by law.

Therefore, the failure of protestee to allege in his petition anything concerning an appropriation for the payment of these refunds is not fatal to his right of action and, therefore, the judgment is not void upon the face of the judgment roll. If in this instance an appropriation had been made by the county and there had been in said appropriation at the time this action was filed an amount sufficient to refund to protestee his claim, this fact would have constituted a defense to the county; but even so, would not have had any effect other than limiting the judgment to the amount paid plus interest to the date of the judgment. If the county had appropriated to pay these items and has such money available, the holder of the certificates may not ignore this fund and by bringing suit and obtaining judgment throw the additional burden of costs of the action and interest upon the judgment upon the county.

Much of the argument made on behalf of the protestant deals with the necessity of handling these situations by the method of appropriation in order that the true relation of the total indebtedness of the county and this claim of indebtedness, in respect to the year in which it was incurred and the constitutional limits upon indebtedness, may be

observed. In our opinion the illegality of the tax sale certificate and the county's obligation thereon arise with the transaction. But we have held, in determining the period of limitations, that the statute does not begin to run against a claim filed under this section until the invalidity of the certificate is attacked and determined. See Meriwether v. Board of Com'rs of Comanche County, supra. See, also U. S. v. Southern Surety Co., 9 F. (2d) 664. To adopt protestant's argument might result in the illegality of a tax sale certificate of one year not being asserted or determined until two or three years subsequent, whereupon an appropriation to pay the claim for refund would be met with a protest upon the ground that the income and revenue for the year under protest were being taken to pay the indebtedness of a preceding fiscal year.

Such course would require a certificate purchaser to learn of the illegality of his certificate at his peril. As to the constitutional limits upon indebtedness, nothing has been said herein which can be taken to mean that to pay a judgment obtained for such a refund an appropriation may be made in excess thereof.

The judgment of the Court of Tax Review is reversed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. RILEY, J., absent.